Good morning, your honors. Leo Terrell, I'm one of the attorneys. And for my portion of the case, all I need is about three minutes. This is the 05 case. And if I may start, your honors. Counsel. Thank you. Your honors, my case is quite simple. There was no opposition at trial. There's no opposition on the appeal. I think respectfully, Judge Otero, with federal rule 42, consolidated my case in an issue that had nothing to do with the claims that were set forth in the earlier case. We had a case of retaliation. It was similar in nature because the parties were the same. Other than that, that's the end of it. It was independently briefed, served, answered. And Judge Otero, in an attempt to consolidate, brought my case, consolidated my case with the 03 case.  And I was simply saying- They seem to acknowledge that, at least I could tell. Yes. Right. That's basically it, unless the court has any questions. Thank you. Thank you, counsel. Good morning, your honors. My name is Letitia Pepper, and I'm here on behalf of Kimberlyn Hearns, the plaintiff in this case and the appellant. I first want to say I'm really happy to be here and have such a good panel who's so interested in the cases. This is the first time I'll be here arguing in front of the Ninth Circuit. I've been here two times before. Once I was as a plaintiff, and once I was here watching the person who argued after we helped her with her moot court. So I'm really happy to be here and get to argue. I am the person who drafted this long complaint. And I take full credit and full blame to the extent that blame is due, but I believe no blame is due. I went to Hastings College of Law where I took a class from a very good attorney named Eva Jefferson Patterson. And the class I took from her was called Representing the Underrepresented. Counsel, what you remember your teacher telling to you in class is not authority that we can follow. We have to follow the authorities of our court. There is a case that looks to me as though it's just right on all fours with this one. And I'd like you to talk about how, if at all, you can distinguish it. McHenry versus Wren at 84 F3rd 1172. It just seems to be exactly the same sort of thing. And I, frankly, do not see the distinction. So I need your help if there is one. Yes, I can distinguish that case. That case refers to complaints which are dismissible under Rule 8 because they are argumentative, prolix, replete with redundancy, and largely irrelevant. And this case is distinguishable from that case because the complaint in this case, which I drafted, is neither argumentative, prolix, replete with redundancy, nor largely irrelevant. It's 81 pages long, 336 paragraphs, and it has all kinds of stuff about its educational background that's not going to be at issue. I don't see why it isn't. Your Honor, it's not. And the reason it's not is this. This is not, as the defendants have argued, a straightforward civil rights case. What's a straightforward civil rights case? Is that when you work for someone and they come up to your desk and they say that you're fired because you're black? That's about as straightforward as a civil rights case. Yes, yes. And that is not this case. Rule 8, Ms. Pepper. I know you're well aware of Rule 8. Rule 8 says a short and plain statement simply to give the other side notice of what your claim is. Then what's envisioned is a whole panoply of discovery opportunities to lay out what the specifics are for the other side to discover from you what it is you're really There's no need to allege in your complaint evidentiary facts. That's not what is contemplated by Rule 8. Rule 8, if you look at Mr. Terrell's complaint in the related case, it's about nine pages long and it just basically lays out the claim. Retaliation. You don't need to lay out, you don't need to plead 65 pages or whatever it was. It's just unnecessary. Now, what I will say, though, is when you read the complaint, despite its verbosity and all the evidentiary facts are in it, it's quite clear that there are legitimate claims, or at least have the superficial appearance of legitimate claims in there. That had you just simply laid out the claims, you would be going forward. Here's my comment about that. Well, the problem with your comment, though, your comment needs to be couched with the purposes of Rule 8 in mind. Not, as Judge Kleinfeld just said, not based on what some teacher has told you, not something that you think is an ideal way of pleading in federal court, because it isn't. Rule 8 is the guiding principle, short and plain. Your Honor, Rule 8 was adopted to protect plaintiffs, to protect plaintiffs from being kicked out of federal court because they did not know the intricacies of fact pleading. Rule 8 was designed to allow notice pleading, but it does not preclude plaintiffs from pleading facts, even evidentiary facts. The problem is that the opposite of what I was going to say is Ninth Circuit law, and the law of all the circuits, is otherwise, Ms. Pepper. Your Honor, I disagree. And the reason I disagree with this, McHenry talks about the problems with a complaint as being, as I said, that it was argumentative, that it contained redundant and irrelevant facts. And these facts are neither redundant nor irrelevant, and it's not an argumentative complaint. They're evidentiary facts. And it's all right to plead evidentiary facts. If you look at the authorities I cited. What we said in McHenry was that when you do this sort of complaint, you're, in effect, creating a secret complaint. Because the only way a judge can figure out what the complaint is is by making his own outline in chambers, which counsel do not have. So you're imposing a tremendous amount of time on the judge, and then a great deal of time on defense counsel. The time you impose on the judge in figuring out what it is that you're suing for is taken away from other litigants who follow the rule to make it short and plain. And the time imposed on the defendant is not excusable. So what we said there was, look at the forms. And the complaint should resemble the model of the forms. Your Honor. There are forms right in the back of the Federal Rules of Civil Procedure. Your Honor, there is no rule that requires people to follow those forms. And what I was going to refer to is at page 21 and page 22 of my brief, which is the authorities, the treatises that people use when they decide how they're going to plead their complaints. That's Wright and Miller, Federal Practice and Procedure, and also Schwartzer, Federal Civil Procedure before Trial, the Rutter Group. And the Rutter Group is an excellent guide that many people use. And what do these authorities say? And that's why I began by talking about Eva Jefferson Patterson. They say the same thing that she taught us, which is that you may plead facts in order to do a number of things. You plead the facts to educate the judge about your case. So that instead of the judge thinking this is just about someone who was told he's being fired because he's black, this is about somebody who worked in a place for eight years and who was harassed suddenly. If your real goal is to educate the judge, you want the judge to read everything you've written. Actually, you'd like the law clerks to read everything you've written. No, we also want the judge to read everything you've written, Ms. Pepper, because I happen to read everything that usually is presented to me. And the other reason is that when you're stuck with looking at an 80, what was it, 85 pages, 86 pages? 86. You know, lawyers don't, it's just unnecessary. OK, so look, I'm willing to give you, let me ask you this. I'm willing to give you an 85-page complaint to start. OK, because it does set out claims. There's no question about that. It does. All right, it does. But the judge said, Judge Timlin said, it's too long. It's too prolax. Dismissed without prejudice, we file. So what does he get next? Forget all the little nonsense that took place. A First Amendment complaint that, what, was 81 pages? With eliminating one defendant, expanding the margins, or narrowing the margins, I guess it was expanding the margins, whatever it was. And that was the response to the court. Now, why would somebody do that? I don't understand. Two things, if I might. If you'll give me the 86-page long complaint, I'll be happy, because I do believe that the original decision that it should be dismissed for being too long was incorrect under Rule 8. I do. And I can distinguish McHenry. And I want to add on that. One of the other reasons for making the complaint long is not only to educate the judge, but to educate the defendant. And I'd like to say a little bit about that before I address the second. I think a complaint is to educate the defendant? Pardon? The purpose of long was to educate the defendant? Yes, and let me explain that. I wrote, I did this work on a contract basis for the attorney, Ms. Jasenska, who was Mr. Hearn's trial attorney. She was his trial attorney, not I, but she asked me to do this on a contract basis. She had asked me previously to do a complaint for someone with a similar issue, a wrongful termination. Mr. Hearns wasn't terminated. He was not appropriately treated, though. And that complaint, which was in state court, where you have fact pleading, was also very, very long. But the reason she wanted it that way, and the reason she wanted this one. What do we care what she wanted? No, please, Your Honor, let me. Look, counsel, I am getting lost here. I mean, I look at this complaint. It's supposed to be about race discrimination. And then I'm reading all this stuff about oral copulation. And it has nothing to do with race discrimination. Look, may I? It looks like a press release that's just designed to get some public excitement. If I might, the reason that, what I was trying to say was this. The earlier complaints. That you're working on contract, how does that relate to any law that we're supposed to apply? The law is that a plaintiff in federal court may plead facts, may plead evidentiary facts. All that Rule 8 requires is that you give fair notice of your claim. And we gave more than fair notice. Now, for my client to lose his case for giving more than fair notice is simply unjust and unfair. What's unjust about him losing his case because his lawyer won't do what the judge tells the lawyer to do? Now, that is a separate issue. Now, will you give me that the first complaint was acceptable under Rule 8? And I'll go on to that? I should make a deal with you now? Yeah, because I don't want to drop my first argument until I've fully explained it. I'm not going to work out a partial settlement. We don't do that, Ms. Pepper. Then we'll do it as a whole deal. Ms. Pepper, I don't speak for my other further members of the panel. I don't at all. But if you do read the 86-page complaint, and you get to the end of it, and you look at the claims, it's quite clear that there are claims there that could go forward, at least to the next stage, which would be a motion to dismiss or beyond. OK? I'll accept that. Thank you. All right. Now, so the judge, whether he liked what Judge Timlin did or not, he did say, file another complaint. And what does he get? The same thing. You know, and I am not here to defend that. I am here to say that that was a reason that she should have been sanctioned, but not her client. Because she is the one who intentionally decided that she was not going to shorten the complaint. She had already done some things that had made Justice Timlin. She? You mean the lawyer that you wrote it for? Yeah, Ms. Jasenska, the trial attorney. So you're saying it's your boss's fault. She wasn't my boss by that point, I have to tell you. One reason that this probably didn't get fixed is because I was no longer doing any work for her. Well, yes, but let's just. Yes. You're here now in an appellate court defending this claim. Didn't this procedure, failing to file the judge's procedure, just put him in a terrible situation? Isn't this plaintiff hurt by what was done with the second complaint? Oh, absolutely. Didn't you think about that when you had an order from the judge to shorten it and you didn't do it? It was not I who received that order. I had. But you're a lawyer, and you wrote it, and now you're here defending the action. And the poor man is out of court. I'm sorry. I really have to make the background on this very clear, because let me explain my role in this whole case. Ms. Jasenska took Mr. Hearns on as her client. I did not work for her. I was retired. But she knew me, and she asked me, because she had been a DA for 18 years. She had very little civil experience. I suggest that you go on with your other argument. We got your point. No, I think it's very important, because I do not want you to think that I had anything to do with not shortening this complaint. I don't think about you. I think about the client. So forget about your complaint. You were not counsel of record when Judge Timlin issued the order to show cause. Is that correct? That's correct. You didn't make an appearance in this case until after he had dismissed the case, and you filed the Rule 60B motion and asked, and then it got transferred down to downtown and whatnot. Yes, that's correct. I was not involved. At the time that Judge Timlin decided that this opinion, or this complaint was too long, all I had done was to draft the complaint. I interviewed Mr. Hearns for 11 hours. I drafted the complaint. I gave it to his attorney. I had nothing more to do with this case. She was all I had. She could have edited it down. In fact, she was the only one who was ordered to reduce it. I don't care. It's not a sanctions case against lawyers. It's not a malpractice case against lawyers. You're right. It's not a malpractice case against her. But what it is is a case where the judge did sanction her and sanctioned her client. He dismissed this man's. I don't think he called it a sanction. He didn't call it. He just enforced Rule 8. It wasn't a Rule 11 sanction or 1292 sanction. Pardon me. He wasn't enforcing Rule 8 when this case was dismissed with prejudice. What he was doing was enforcing, I think it's Rule 41. It's in my brief. This had nothing at this point really to do with Rule 8 except as an underlying issue. He was really angry. And I used to work for Judge Timlin. And his order is very circumspect. But for him, I can tell, he was very upset with her. Because what had she done? He gave her 18 days leave to amend when it was dismissed without prejudice. And she did not amend. Then he issued an order to show cause, which she ignored. She did nothing. And it was only after Mr. Hearns contacted her to say what is going on that she filed an unsworn statement, not a declaration, an unsworn statement in which she denied having received either the order to file an amended complaint or having received the OSC. And Judge Timlin was very suspicious because the clerk's office showed that these had been sent to her office of record. And even though he was very suspicious about her claim in an unsworn statement, which I've never seen an attorney do before, he very graciously gave her another 18 days leave to amend the complaint. And what did she do? She, not her client, but she changed the margins to make it look like she had shortened the complaint. She took out a few words here and there. She took out a defendant. And that's all she did. And in response to that behavior, which was clearly intentional and egregiously wrong behavior, he dismissed the complaint with prejudice. Now, who was at fault? It was not Mr. Hearns. He was not at fault. He's got valid claims. It was only his attorney. And the decision to dismiss the complaint without- Client is bound by the conduct of his attorney. Ordinarily. And it is only in the Ninth Circuit that Rule 60B6 applies. And if you conclude that her conduct was egregious, it was gross negligence and egregious misconduct, you can save her client from the results of her behavior. And if you look at the record in this case, what this woman was doing was more than just making a mistake. This is where I come in. Because I have- So sue her on behalf of your client. Your Honor, I cannot sue her on behalf of him. And the reason I cannot is I am a witness to what went on. So somebody else can sue her and you. You know what? It's not so easy to find an attorney as you might think. And so he has been representing himself. He filed a malpractice complaint against her. And I just got a letter about two weeks ago in which he has dismissed his malpractice complaint against her and why. I have- Let me back up to something you said before. She filed a tort claim against him with the County of San Bernardino. Let me bounce back to something you said before. It didn't sound right to me, so I checked on it. And now I'm more confused. You said that the case was not dismissed for failure to comply with Rule 8. But I'm looking at the judge's order at page 265 of the excerpts. And the judge says, the court will therefore dismiss Hearn's first amended complaint with prejudice for failure to obey the June 25 order requiring him to comply with Rule 8A. And he cites McHenry. Yes. And I said that was an underlying issue. But what he talked about, if you read everything in his order, what he's talking about is how he brings up again the fact that she didn't file a first amended complaint at all, that she didn't respond to the OSC, that she claimed that she didn't get these things in an unsworn statement, and that she did file a first amended complaint on time after he gave her the additional 18 days. So she did file it on time. And it was shorter. But the reason it was shorter was because how she did it. So what he's really getting her for is that she is intentionally stepping around his order to make it shorter in a meaningful way. Thank you, counsel. Your time has expired. Thank you. Good morning, your honors. My name is James Odlem, and I represent the defendants and the appellees in this case. First of all, I think it's important to point out that it's an abuse of discretion standard that the court is applying. And I won't belabor what I think is pretty self-evident, is that both the complaint and the first amended complaint grossly failed to comply with Rule 8. Just they're too long. They're too long. But they're organized in their claims. Whether they're claims or not, we never got to it. Because I did file Rule 8. No, but if you read it, as I did, I read it. I read all 86 pages. And there are claims that are stated in that complaint. Probably, yeah. Yeah, probably. You have to acknowledge that there are claims in that. It's just, it was unfortunately too long. It wasn't a 12B6 dismissal for failure to state a claim. No, the judge never ruled on my 12B6s. I filed an 8 and then a 12B6 in the alternative. So there's no 12B6 dismissal. We don't have to decide whether a claim was stated. But Your Honor, you're right. Somewhere in there, there's some potential claims. And that's why Judge Timlin acted appropriately in giving them leave to amend. And there was a lot of what I would call monkey business after he issued that order where there was no response. Judge Timlin did not act precipitously. In fact, he showed great restraint. Couldn't the judge have said to you that you don't have to answer the first 46 pages of the First Amendment complaint, which is just a lot of narrative? Just answer the claims, which start on page 47 and end on page 68. Wouldn't that have been a remedy that would have resolved this? I don't know. I've never seen, in my experience, I've never seen anything like that. Did you strike surpluses out of a complaint? I have not. No. How about sanctions? How about monetary sanctions? There's nothing here that indicates that he considered monetary sanctions. No, there isn't anything that shows that he considered monetary sanctions. However, instead, what happens here is the client ends up getting hurt. This was a dismissal under 41A, 41B. It's actually 41B, failure to comply with the court's rules or orders. Correct. It was. 41B. Yes. Under 41B, we have case law that says he has to consider certain factors before he exercises his discretion under 41B. And I failed to see where he did that. Well, Your Honor, he did actually, in his order, in a footnote, he does go through and- The 41B factors? I'm not sure of all the factors the Ninth Circuit has laid out. But I would like to address that, Your Honor, to say, I think the real, probably the biggest issue here is whether dismissing with prejudice was an abuse of discretion or not. And I submit that it was not. First of all, it was not done hastily. Plaintiff's counsel failed to respond to many of his orders. He gave her multiple chances. Finally, when she did file the First Amendment complaint, it was a flagrant, a flagrant violation of the court's order. The margins were changed, essentially. And the court goes through in his order of dismissal and analyzes that pretty carefully. In addition, Your Honor, and we heard it just this morning, plaintiff continually refuses to accept the fact that the complaint does not, in the First Amendment complaint, do not comply with Rule 8. I think that's pretty telling evidence that another sanction probably wouldn't have done any good. We would still be, we would have still been arguing about whether this 61-page or 86-page complaint complied with Rule 8. So I think that's compelling evidence that other sanctions wouldn't have worked. There is evidence in the record, by the way, that the plaintiff is not blameless in this. There is the declaration of Dinuta Tijinska, the first lawyer, that says she had to argue with the plaintiff, unsuccessfully apparently, not to, or. Well, since when does a client control what's contained within a complaint? That's news to me. Well, in the Taney case, and I'm going to get to that in a few minutes, Community Dental v. Taney, which is the case under Rule 60b-6, 60b-6, it's been cited. One of the things they point out is, in giving that plaintiff relief, that he was not at all involved or to blame for the misconduct of his lawyer. So I think. Do you need that under Link v. Wabash? No, and no. Under Linn v. Wabash, a lawyer, excuse me, a client, has to live with the results of his lawyer's conduct, except in very, very unusual situations. There is a malpractice remedy that's available then. If a lawyer, excuse me, if a client didn't have to live with the consequences of a lawyer's decisions, our system couldn't work. I guess the most common thing is the lawyer screws up, misses the statute of limitations. Totally not the client's fault. That's correct, and there is a remedy to the client in that situation, but our system wouldn't work if every time there was a bad result because of a lawyer decision, the client would come and say, I'm not bound by that. By the way, on the Community Dental v. Tanny case, which is dealt with 6db6, I would like to bring the court's attention to a later Ninth Circuit decision, decided after this case was briefed, called Latshaw v. Trainor-Worthan, 452 F. 3rd. 1097, which seems to restrict the Tanny case to default judgment situations. So Tanny's been extremely narrowly construed by this court. In fact, Judge Otero. Go ahead, no, go ahead, go ahead. Judge Otero went through on the 6db6 motion, went through and made detailed findings why Tanny was completely in opposite to the situation. I guess 6db6 narrows our review even more, doesn't it? Pardon? Wouldn't our review be narrowed even more because we technically only have this on a 6db6? Yes, that's right. Didn't he appeal from the dismissal, though? I'm sorry, did he? The appeal is from the dismissal as well as from the denial of the 6db6. Yeah, it was Judge Timlin who dismissed and- But the appeal to us is from the dismissal. Yes. The dismissal. Then they filed a 6db6 and they appealed that separately, which they can do, so there's like two appeals. Yeah, I think they've been all consolidated. Right, but I mean, they're separate issues. Yes, they are separate issues. They're separate issues. Right, and I may have been blurring them or- Right, but in my mind, they're separate. And going back to why- So if you go back to the dismissal for just a moment and you go back to what led up to the dismissal, the original determination that the complaint violated Rule 8, short and plain. Now, usually, in my experience as a district court judge, when we invoked Rule 8, which was actually very rare, to be honest with you. First time I've ever been- We didn't do it very often, but it was when you get a pro per, you know, and they tell a story that makes no sense and they made claims that make no sense to what's in the complaint. And it's, you know, it just is a pro se, somebody who's just ranting and raving about something. And then, you know, Rule 8 has a role. You can tell them, look, you know, here's what you got to do. You got to cut this out. You got to organize it. You got to tell me what your claims are. And, you know, now this complaint, this complaint is long, but it tells a story. And in the end, when you get to the end of it, there are claims there. So, you know, in my own mind, I question whether or not, even though I gave Ms. Pepper a hard time, I question whether or not there really is a true violation of the plain, you know, Rule 8's requirements. This is notice pleading. You've just basically got to give notice. Some people are a little more windy than other people. And, you know, you see these, I was just working on an antitrust complaint, and it was about 56 pages long. Did oral copulation play some part in this case? Not to my knowledge. I couldn't figure out why it was in a complaint. Is it an evidentiary fact of some significance in this case? Your Honor, going back. It didn't look like anybody, I couldn't figure it out. Why am I reading about this? I don't know if it's that interesting a case or not, but going back to McHenry versus Wren, I believe is pretty close to being on all fours. And in that case, they described a 55-page complaint as narrative ramblings and storytelling or political griping. Going back to the pro se thing, I think you'd give a pro se plaintiff a little bit more leeway than an attorney. This, and we talked about grandstanding and that sort of thing. They did take the opportunity to send this to the newspaper, and it was in the newspaper about the Gobins and all that kind of stuff. Maybe irrelevant, and I think it's outside the record, but it does tie. Some lawyers tend to be more windy than other lawyers. Well, windy is one thing. And Mr., by the way, I agree with Mr. Terrell's position on this appeal. I don't think his case should have been dismissed. Mr. Terrell's complaint is a good example of, it's a retaliation case on behalf of the same client, against the same clients. What is it, I don't know, is it 12 pages or nine pages or something like that? Windy is one thing, but this is over the top, I submit. I have to admit, I've never read the thing in one single sitting. I read part of it, I have to take a break, read part of it. Plus, I would have to answer the thing, paragraph by paragraph. And the cases we cite in our brief noted that. It's unfair to the court, and it's unfair to the defendants to have to deal with something like that. Under Rule 41B, and you look at the factors that the district court's supposed to consider, one of the factors is drastic sanctions. The one obvious one is monetary sanctions against the lawyer. You're gonna pay for what it costs you guys to file the second motion or whatever. You're gonna pay attorney's fees. Another, as Judge Hart suggested, was, you know, I'm just gonna fix this complaint right now. The first 41 pages are off the table, and all you gotta do is answer the other. What's wrong with that? There are, those could have been. But there's nothing, our case law says you're supposed to look at the alternatives. There's nothing here that looks like he looked at the alternatives. There is, he specifically addresses some of the alternatives in the footnotes. He does? Let me see. Page 265. Go with me, I'll see if I can find it. Page 265. 265. And he cites Ren v. McHenry. Or excuse me, McHenry v. Ren. And again, not to, at the risk of repeating myself. He mentions a couple things there. He says he doesn't believe alternative measures less drastic than dismissal would work, which indicates he considered them. And then he says he gave her a chance. She gives the, she says she didn't receive these things. It's really hard to understand. As a, you know, I understand that as a matter of judicial policy, ordinarily you wanna hear disputes on the merits. But there's other judicial policies at issue here. Federal court's an important place in dealing with serious issues. And all the- Well, if you look at the complaint, it looks like it's a pretty serious case. Yeah, what I was gonna say, though, is that the rules are there for people to follow so the courts can get to the cases and not have to have secret complaints and not clog up the courts so the people that are obeying the rules can't have their cases heard. And by the way, Mr. Hearns is not out of court. Mr. Terrell, I've conceded. He can go forward with his case and we'll fight that one on the merits. If I had one thing to emphasize, I think it's the abuse of discretion standard here. Maybe there were things Judge Timlin could have done differently than he did. But I don't think a reasonable court could say that he abused his discretion in doing what he did. He gave them multiple choices, multiple chances. He was faced with what I think was a pretty egregious thumbing of someone's nose at the court by filing the First Amendment complaint. I think he was well within his discretion. If there's a remedy, perhaps- So you think it could have held her in contempt? I don't know. To be honest- You think it was contemptuous? I think it was. I think- And yet, the client should pay. Yeah, under the Lynn case, and even under the Tanny case, if it were to apply to a situation like this, she didn't abandon him. She didn't lie to him. There's no evidence of that. That's what Tanny said. Effectively, no representation. Obviously, she didn't do a very good job. But under our system, you can't relieve a client from all the consequences of what his or her lawyer does. The system wouldn't work otherwise. And I think an appellate court should allow a district court judge who was there dealing with the situation to manage his docket. And if people are gonna flagrantly disobey his orders and flagrantly disregard the rules, and to this day, claim that the complaint and the First Amendment complaint comply with Rule 8, I think dismissal was well within his discretion. Thank you, counsel. Thank you. Counsel, you went well over your time, but if you wish to take 30 seconds, we'll give it to you. Thanks. Thank you very much. I'd like to point out in my opening brief, if you look at pages 32 through 34, it'll talk about whether or not this was an abuse of discretion, and I believe it was. I'm gonna set the stage. But also, there, oh wait, I'm sorry. I think I gave you the wrong pages. I think that that should have been page 27, 28, 29. But also, Ms. Jasenska did lie to him. She did. She did a lot more after his case was dismissed. She didn't give him good advice about why his case was dismissed. She didn't tell him that I was trying to get ahold of him because I couldn't figure out why the case was dismissed. She told me that she was going to put me in touch with him because he'd been sent to the reserves and I couldn't get ahold of him to find out what was going on. She lied to him, she lied to me, and she had a reason, because she knew what she did was wrong. And she was afraid, I'm sure, that he was going to sue her. So in terms of these various standards, I think my brief covers it. And I hope you will give this gentleman relief from what his attorney did, not me, his trial attorney treated him very badly. Thank you. Thank you, counsel. Burns v. City of San Bernardino is submitted. And we'll hear Webb v. Smart Document Solutions. Thank you.
judges: Kleinfeld, Paez, Hart